UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

---

CHARLES R. O'NEAL,

      Plaintiff,

v.

QUANBECK, et al.,

      Defendants.

Civil No. 12-2105 (RHK/JSM)

**REPORT AND RECOMMENDATION**

Plaintiff, a Minnesota state prison inmate, commenced this action in August 2012, by filing a civil complaint. [Docket No. 1]. Plaintiff did not pay the required $350 filing fee, (see 28 U.S.C. § 1914(a)), but applied for leave to proceed in forma pauperis, ("IFP"). [Docket No. 2.] By Order dated August 28, 2012, Plaintiff was advised that his IFP application would not be addressed, and his case would not go forward, until he paid an initial partial filing fee of at least $35.84, as required by 28 U.S.C. § 1915(b)(1). [Docket No. 4]. Plaintiff paid this fee [Docket No. 5],[1] and the Court then reviewed the record to determine whether Plaintiff's IFP application should be granted and the case should proceed. At that time, the Court found that Plaintiff had filed several new documents, which appeared to supplement his original Complaint. Because it appeared that Plaintiff wanted to amend his original Complaint, these documents were construed to be a motion for leave to amend. On September 27, 2012, the Court granted Plaintiff leave to file an Amended Complaint. [Docket No. 12]. That Order included a list of very specific

---

[1] About a month after Plaintiff submitted that first payment of $35.84, the Court received a second payment for the same amount. [Docket No. 13]. Thus, Plaintiff has paid a total of $71.68 toward the statutory filing fee of $350.00.

1

pleading requirements that Plaintiff was instructed to follow if he elected to amend. Order, pp. 2-3. The Order also informed Plaintiff that if he intended to amend, he must do so by October 26, 2012. Id., p. 3.

After Plaintiff was granted leave to amend, he filed a letter that prompted the Court to review the file.[2] At that point, it appeared that Plaintiff still intended to amend his Complaint, but he was confused about how that should be done. On October 23, 2012, the Court entered an Order restating the list of specific pleading instructions provided in the preceding order, and Plaintiff was informed that he must file an entirely new amended complaint that complied with all of the prescribed pleading instructions. [Docket No. 14],

On November 27, 2012, Plaintiff filed a document entitled "Amended Complaint," [Docket No. 18], which was intended to satisfy the Court's October 23, 2012 Order. However, it appears that Plaintiff deliberately ignored most of the pleading requirements prescribed by the Court. As a result, Plaintiff's Amended Complaint failed to state a cause of action on which relief can be granted. Therefore, the Court recommends that this action be summarily dismissed.

**I.  BACKGROUND**

Plaintiff's Amended Complaint described an incident that allegedly occurred when he was an inmate at the Minnesota Correctional Facility in Oak Park Heights, Minnesota, ("MCF-OPH"). The facts as described in the Amended Complaint are as follows. During the evening of January 6, 2012, Plaintiff was sleeping in a cell at MCF-OPH, and woke up from a "sleep apnea attack." Amended Complaint, p. 1. He "beat on the door" of his cell seeking help, and correctional officer Chris Bolmer came to the cell to check on

---

[2]  This Court erroneously referred to "Docket No. 14" in referencing this letter in its October 23, 2012 Order. The letter was filed as Docket No. 20.

him.  Bolmer apparently suspected that Plaintiff was reacting to some type of alcoholic beverage he had consumed.  Id.

Plaintiff asked Bolmer for medical assistance, but Bolmer did not provide any aid to Plaintiff.  Id.  Instead, Bolmer sought assistance from two other correctional officers named Charles Smith and Sue Schroeder. Id.  Another correctional officer named Steve Larson later joined Bolmer, Smith and Schroeder at Plaintiff's cell.  Schroeder instructed Plaintiff to "cuff up," which apparently meant that Plaintiff was to put his arms through a slot in his cell door, so the officers could handcuff him.  Id., p. 3.  As Plaintiff moved toward Schroeder, she commented "you're a big boy." Id.[3]  After Plaintiff put his hands through the slot in his cell door, Smith and Larsen squeezed, bent and hit his wrists, and then pulled on his arms.  Id.  They evidently did so while they were trying to handcuff Plaintiff.  When Plaintiff told Smith and Larsen that they were hurting him, they told him to "shut up."  Id.

Someone searched Plaintiff's cell, apparently looking for alcohol, but nothing was found.  After the search was completed, Schroeder gave Plaintiff a Breathalyzer test, and Plaintiff "blew all zeros."  Id.  Someone then asked Plaintiff if he "would like to be seen by health services."  Id.  The Amended Complaint did not describe anything that happened thereafter, and, in particular, the Amended Complaint did not indicate whether Plaintiff ever received any medical attention that evening, or at any time thereafter. Nothing in Plaintiff's Amended Complaint suggested that he had any continuing medical issues or concerns after his cell was searched.  The Amended Complaint did not describe any residual injury or medical condition that remained untreated after the

---

[3]  Plaintiff described himself as being a six-foot, six-inch, 380 pound African American.  Amended Complaint, p. 2.

3

search.

Plaintiff's current pleading does not include any request for compensatory relief, but rather, Plaintiff requested only "injunctive relief." Id. Plaintiff sought an injunction against an unidentified government official, which would bar that unnamed official from engaging in "cruel and unusual punishment," "neglecting. . .medical aid," "racial profiling" and "racial discrimination." Id., pp. 3-4.[4]

## II. DISCUSSION

Because Plaintiff is a prisoner seeking redress from government employees, his pleading is subject to preliminary "screening" pursuant to 28 U.S.C. § 1915A. That statute, which is part of the Prison Litigation Reform Act of 1995, ("PLRA"), requires federal courts to screen the pleadings in every civil action brought by a prisoner against governmental entities or employees "before docketing, if feasible or, in any event, as soon as practicable after docketing." 28 U.S.C. § 1915A(a). The Court must determine which aspects of the pleading are actionable and should be allowed to proceed. If the pleading fails to state a legally cognizable claim, the action must be dismissed. 28 U.S.C. § 1915A(b)(1).

To state an actionable claim for relief, a plaintiff must allege a set of specific historical facts, which, if proven true, would entitle the plaintiff to some appropriate redress against the named defendants under some cognizable legal theory. Although

---

[4] Plaintiff recently filed another set of papers, [Docket Nos. 21-22], but failed to offer any cogent explanation for those submissions. If Plaintiff was attempting to further amend or supplement his complaint, that effort must be rejected. Plaintiff has already had more than enough chances to present his claims in a single integrated pleading, and furthermore, he has not complied with the rules governing amendments to pleadings. See Fed. R. Civ. P. 15(a), Local Rule 15.1. In any event, the Court finds nothing in Plaintiff's most recent submission that adds anything of consequence to his numerous previous submissions in this case.

federal courts must "view pro se pleadings liberally, such pleadings may not be merely conclusory: the complaint must allege facts, which if true, state a claim as a matter of law." Martin v. Aubuchon, 623 F.2d 1282, 1286 (8th Cir. 1980).

A complaint fails to state a cause of action if it does not allege "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009). The facts supporting a plaintiff's claims must be clearly alleged. Federal courts are not required to "assume facts that are not alleged, just because an additional factual allegation would have formed a stronger complaint." Stone v. Harry, 364 F.3d 912, 915 (8th Cir. 2004).

To bring an actionable civil rights claim, as Plaintiff is attempting to do here, a complainant must allege a set of historical facts showing that the named defendants violated the complainant's federal constitutional rights while acting under color of law. West v. Atkins, 487 U.S. 42, 48 (1988). Establishing a defendant's liability in a civil rights action "requires a causal link to, and direct responsibility for, the deprivation of rights" protected by the Constitution. Madewell v. Roberts, 909 F.2d 1203, 1208 (8th Cir. 1990); Speed v. Ramsey County, 954 F.Supp. 1392, 1397 (D. Minn. 1997) (same). In other words, civil rights claimants must plead facts showing each named defendant's personal involvement in alleged constitutional wrongdoing. Ellis v. Norris, 179 F.3d 1078, 1079 (8th Cir. 1999). See also Beck v. LaFleur, 257 F.3d 764, 766 (8th Cir. 2001) (upholding summary dismissal of civil rights claims, because plaintiff's complaint "failed to allege sufficient personal involvement by any of defendants to support such a claim.").

In this case, Plaintiff's Amended Complaint failed to state an actionable § 1983 claim. The Court found Plaintiff's pleading to be fatally deficient for several reasons.

To begin with, Plaintiff has not clearly identified who he is attempting to sue. The Court's last Order specifically stated that "[t]he amended complaint must clearly identify each individual Defendant that Plaintiff is attempting to sue." Order, October 23, 2012, p. 3. However, Plaintiff's Amended Complaint did not clearly identify any defendants. In fact, the word "defendant" never even appears in the Amended Complaint. Furthermore, the one party whose name appears in the caption of the Amended Complaint, "Quanbeck," is never mentioned again in that pleading. The Court recognizes that Plaintiff probably is trying to sue one or more of the MCF-OPH correctional officers mentioned in the Amended Complaint, but it is unclear which of those officers is actually intended to be a defendant.[5]

The Court's October 23, 2012 Order also required that "[t]he amended complaint must clearly describe what, specifically, each individual named Defendant actually did (or failed to do) that allegedly violated Plaintiff's rights under federal law." Order, p. 3. Although the Amended Complaint alludes to "cruel and unusual punishment under the 8th Amendment," Plaintiff did not adequately describe what the defendants (whoever they might be) actually did that violated the Eighth Amendment.

---

[5] Plaintiff cannot credibly assert that the intended defendants are identified in other papers he has filed in this case, because the Court's last Order plainly informed him that all of his claims must be presented in his Amended Complaint. The Order stated that "[t]he amended complaint must be an <u>entirely new and complete</u> pleading that fully replaces (and does not merely supplement) the original complaint." Order, October 23, 2012, p. 3 (emphasis in original). Therefore, Plaintiff cannot expect the Court to ascertain who he is attempting to sue by examining all of his other submissions of record in this case.

To state an actionable civil rights claim based on the Eighth Amendment, a prisoner must allege facts showing that prison officials were personally aware of some particular "excessive risk" to his health or safety, and knowingly and deliberately disregarded that risk. Williams v. Delo, 49 F.3d 442, 446 (8th Cir. 1995). The prisoner's complaint must allege facts showing that the named defendants harmed him by deliberately disregarding his "serious medical needs," (Estelle v. Gamble, 429 U.S. 97, 104-05 (1976)), forcing him to live in conditions that do not meet the minimum standards of a civilized society, (Rhodes v. Chapman, 452 U.S. 337, 347 (1981)), using excessive physical force, (Hudson v. McMillian, 503 U.S. 1, 6-7 (1992)), or deliberately exposing him to an obvious risk of physical harm, (Farmer v. Brennan, 511 U.S. 825, 834 (1994)). Plaintiff's Amended Complaint does not include any factual allegations showing any such mistreatment.

Furthermore, an Eighth Amendment claimant must allege facts showing that the defendant(s) caused the plaintiff to suffer some actual, identifiable harm. "While a serious injury is not necessary, some actual injury is required in order to state an Eighth Amendment violation." White v. Holmes, 21 F.3d 277, 281 (8th Cir. 1994) (emphasis added). In addition, if a prisoner claims that a prison official has violated his Eighth Amendment rights by acting with deliberate indifference to the prisoner's serious medical needs, the claim must be supported by factual allegations showing that the prisoner's medical condition actually was exacerbated because of the prison official's alleged deliberate indifference. Thus, "[w]hen the inmate alleges that a delay in medical treatment rises to the level of an Eighth Amendment violation, the objective seriousness of the deprivation should also be measured by reference to the effect of delay in treatment," i.e., the inmate must "establish the detrimental effect of delay in medical

7

treatment." Laughlin v. Schriro, 430 F.3d 927, 929 (8th Cir. 2005), cert. denied, 549 U.S. 927 (2006) (citations and internal quotation marks omitted).

Here, Plaintiff's Amended Complaint did not present an actionable Eighth Amendment claim, because there were no factual allegations showing that any prison officials were deliberately indifferent to any serious medical need that Plaintiff exhibited during the events described in his pleading. Plaintiff alleged that he suffered a "sleep apnea attack," and that he was "choking and vomiting and trying to catch his breath," before he called for help and Officer Bolmer came to his cell. However, the Amended Complaint does not describe Plaintiff's condition between the time Bolmer first arrived at his cell and the time when someone asked whether Plaintiff "would like to be seen by health services." There are no allegations that Plaintiff was suffering from "serious medical needs" that required prompt medical attention while his cell was being searched. Indeed, the Amended Complaint does not even state whether Plaintiff actually accepted the offer "to be seen by health services" when that offer was made.

Furthermore, even if Plaintiff was suffering from a serious medical condition during the brief period of time described in his Amended Complaint, he certainly has not alleged that he suffered any actual injury as a result of the allegedly delayed offer of medical attention. Plaintiff has not alleged any facts showing that he suffered any <u>additional and avoidable</u> harm because prison officials did not respond more quickly to his alleged medical problems. Thus, the Court finds that Plaintiff has failed to plead any actionable Eighth Amendment claim based on deliberate indifference to serious medical needs.

It may be that Plaintiff is trying to sue Smith and Larson for allegedly using "excessive force" when they handcuffed him. However, Plaintiff has failed to plead an actionable § 1983 claim based on the handcuffing incident because he has alleged no

8

facts showing that he suffered any sufficiently serious injury as a result of that incident. To plead an actionable a § 1983 claim based on the alleged use of excessive force, the claimant must allege facts showing that he suffered something more than temporary discomfort. Andrews v. Fuoss, 417 F.3d 813, 818 (8th Cir. 2005) (excessive force claim cannot be sustained where claimant shows no more than de minimis injuries). "An 'actual injury' must be shown to support an excessive force claim under the Fourth Amendment." Hanig v. Lee, 415 F.3d 822, 824 (8th Cir. 2005) (citing Dawkins v. Graham, 50 F.3d 532, 535 (8th Cir. 1995)).

Our Court of Appeals has repeatedly applied the "actual injury" requirement in cases where law enforcement officials are accused of using excessive force when applying handcuffs. See Foster v. Metropolitan Airports Comm'n, 914 F.2d 1076 (8th Cir. 1990) ("nerve damage" that allegedly resulted from being handcuffed too tightly did not support excessive force claim in the absence of "medical records indicating... long-term injury as a result of the handcuffs"); Crumley v. City of St. Paul, 324 F.3d 1003, 1008 (8th Cir. 2003) (excessive force claim based on malicious application of handcuffs must be dismissed where the claimant suffered no more than minor injuries). See also Policky v. City of Seward, Neb., 433 F.Supp.2d 1013, 1024 (D. Neb. 2006) (excessive force claim dismissed where plaintiff claimed that "handcuffs were painful," but did not show "any long-term injury as a result of the handcuffs"). Here, Plaintiff has not described any long-lasting ill effects as a result of the handcuffing incident described in his Amended Complaint. Therefore, Plaintiff has failed to plead an actionable § 1983 claim based on that alleged incident.

Plaintiff also seems to believe that his constitutional rights were violated when Schroeder allegedly called him a "big boy." While offensive verbal harassment of

9

prisoners is obviously inappropriate, such conduct will not, by itself, support a federal civil rights claim. Martin v. Sargent, 780 F.2d 1334, 1338 (8th Cir. 1985) (abusive language or verbal harassment, is not, by itself, unconstitutional, and will not support a civil rights cause of action); Doe v. Gooden, 214 F.3d 952, 955 (8th Cir. 2000) (same).

Finally, the Court finds that Plaintiff has failed to state an actionable claim because the only relief he is seeking – "injunctive relief against a government official" – is no longer available. Plaintiff's current lawsuit is based on events that occurred while he was incarcerated at MCF-OPH, and he is (presumably) seeking injunctive relief against some unidentified "government official" who works at that institution. However, all of Plaintiff's submissions indicate that he is no longer confined at MCF-OPH. Sometime after the incident described in the current pleading, Plaintiff was transferred to the Minnesota Correctional Facility in Rush City, Minnesota, and he is still confined there. Because Plaintiff is no longer confined at MCF-OPH, his request for injunctive relief – which, again, is the only relief he has requested[6] – has become moot. See Martin v. Sargent, 780 F.2d 1334, 1337 (8th Cir. 1985) (prisoner claims for injunctive relief rendered moot by transfer to a different institution); Randolph v. Rodgers, 253 F.3d 342, 344-46 (8th Cir. 2001) (dismissing prisoner's claims for injunctive relief against prison officials where the prisoner was no longer confined at the facility where those prison officials worked). For this additional reason, the Court finds that Plaintiff's amended complaint fails to state an actionable claim for relief.

## III.   CONCLUSION

For all of the reasons discussed above, the Court concludes that Plaintiff has failed

---

[6]   Plaintiff has not alleged any actual compensable injury in his Amended Complaint and he has not requested any compensatory damages.

to plead a cause of action on which relief can be granted. Plaintiff has been given ample instruction on how to present his claims, and he has been given ample opportunity to plead an actionable claim. However, Plaintiff has failed to present a coherent statement of facts that could support a cause of action against any identifiable defendant. The Court will therefore recommend that this case be summarily dismissed pursuant to 28 U.S.C. § 1915A(b).

Because Plaintiff has not pled any viable claims, his application for leave to proceed IFP must be denied. See 28 U.S.C. § 1915(e)(2)(B)(ii). Notwithstanding the dismissal of this action, Plaintiff shall remain liable for the unpaid balance of the $350 filing fee.[7] To date, Plaintiff has paid only $71.68, so he still owes $278.32. Prison officials will have to deduct that amount from Plaintiff's prison trust account and pay it to the Clerk of Court in the manner prescribed by 28 U.S.C. § 1915(b)(2). Lastly, because Plaintiff has failed to plead an actionable claim for relief, the Court will recommend that the dismissal of this action be counted as a "strike" against him for purposes of 28 U.S.C. § 1915(g).

---

[7] Under the PLRA, prisoners may be excused from pre-paying the full amount of the applicable filing fee before filing an action. However, 28 U.S.C. § 1915(b) clearly states that prisoners "shall be required to pay the full amount of the filing fee." In other words, prisoners are permitted to file actions without paying the full filing fee in advance, but they still remain liable for the fee. Ashley v. Dilworth, 147 F.3d 715, 716 (8th Cir. 1998) ("[t]he purpose of the [PLRA] was to require all prisoner-litigants to pay filing fees in full, with the only issue being whether the inmate pays the entire filing fee at the initiation of the proceeding or in installments over a period of time"). Nothing in the PLRA suggests that the dismissal of a prisoner's action would extinguish the ultimate obligation to pay the filing fee. See In re Tyler, 110 F.3d 528, 529-30 (8th Cir. 1997) ("the PLRA makes prisoners responsible for their filing fees the moment the prisoner brings a civil action or files an appeal").

## IV. RECOMMENDATION

Based upon the above, and upon all the files, records, and proceedings herein,

**IT IS RECOMMENDED** that:

1. Plaintiff's application for leave to proceed in forma pauperis, (Docket No. 2), be **DENIED**;

2. This action be summarily **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(1);

3. Plaintiff be required to pay the unpaid balance of the Court filing fee, namely the sum of $278.32, in accordance with 28 U.S.C. § 1915(b)(2); and

4. The dismissal of this action be counted as a "strike" against Plaintiff for purposes of 28 U.S.C. § 1915(g).

Dated: January 4, 2013

*Janie S. Mayeron*
JANIE S. MAYERON
United States Magistrate Judge

NOTICE

Under D.Minn. LR 72.2(b) any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by **January 18, 2013**, a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections. Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals. A party may respond to the objecting party's brief within ten days after service thereof. All briefs filed under this rule shall be limited to 3500 words. A judge shall make a de novo determination of those portions of the Report to which objection is made. This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable directly to the Circuit Court of Appeals.